IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

GERALD ALLEN DRAIN,

        Plaintiff

        v.

NANCY A. BERRYHILL,
Acting Commissioner Social Security
Administration

        Defendant

Civ. No. 6:16-cv-02410-MC

OPINION AND ORDER

_____

MCSHANE, Judge:

    Plaintiff Gerald Drain brings this action for judicial review of a final decision of the Commissioner of Social Security denying his application for disability insurance benefits (DIB) under of the Social Security Act. Tr. 22.[1] The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3). Because the Commissioner's decision is based on proper legal standards and supported by substantial evidence, the Commissioner's decision is AFFIRMED.

## **PROCEDURAL AND FACTUAL BACKGROUND**

    Plaintiff filed an application for DIB on September 25, 2012, alleging disability as of January 1, 2011. Tr. 22. The claim was denied initially and upon reconsideration. *Id*. Following a hearing, the administrative law judge (ALJ) issued an unfavorable decision denying Plaintiff's claim. *Id.* The Appeals Council denied the request for review, making the ALJ's decision the final decision of the Commissioner. Tr. 1–4. This appeal followed.

---

[1] "Tr" refers to the Transcript of Social Security Administrative Record provided by the Commissioner.

1 – OPINION AND ORDER

## **STANDARD OF REVIEW**

The reviewing court shall affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r for Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). To determine whether substantial evidence exists, this Court reviews the administrative record as a whole, weighing both supporting and deterring evidence from the ALJ's conclusion. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The ALJ may "reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Brown-Hunter v. Colvin,* 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Lingenfelter v. Astrue,* 504 F.3d 1029, 1036 (9th Cir. 2007)).

The Commissioner's findings are upheld if supported by inferences reasonably drawn from the record; if evidence exists to support more than one rational interpretation, the court must defer to the Commissioner's decision. *Batson*, 359 F.3d at 1193; *Aukland v. Massanari,* 257 F.3d 1033, 1034-35 (9th Cir. 2000). A reviewing court, however, "cannot affirm the Commissioner's decision on a ground that the Administration did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). A court may not reverse an ALJ's decision on account of a harmless error. *Id.* at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). The ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence. *Tommasetti v. Astrue,* 533

F.3d 1035, 1041 (9th. Cir. 2008). Finally, the ALJ need not discuss all evidence presented, but must explain why significant probative evidence has been rejected. *Stark v. Shalala*, 886 F. Supp. 733, 735 (D. Or. 1995). *See also Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (in interpreting the evidence and developing the record, the ALJ need not discuss every piece of evidence).

## **DISCUSSION**

A claimant is disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which…has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). The Social Security Administration (SSA) uses a five step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. § 416.920, 20 C.F.R. 404.1520. The initial burden of proof rests upon the claimant to meet the first four steps. If claimant satisfies his or her burden with respect to the first four steps, the burden shifts to the Commissioner at step five. *Id.* At step five, the Commissioner's burden is to demonstrate the claimant is capable of making an adjustment to other work after considering the claimant's residual functional capacity (RFC), age, education, and work experience. *Id.* If the reviewing agency determines that the claimant is or is not disabled at any step of the evaluation process, the evaluation will not go onto the next step. *Id.*

At step one of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of January 1, 2011 through June 30, 2012. Tr. 24. At step two, the ALJ found Plaintiff suffered from the following severe impairments: diabetes mellitus with peripheral neuropathy and diabetic retinopathy, gastroparesis, and obesity. Tr. 25. The ALJ found Plaintiff's mental impairments caused no more

3 – OPINION AND ORDER

than mild limitations, and no episodes of decompensation, making his paragraph B criteria from 20 C.F.R. Part 404, Subpart P, Appendix 1 "non-severe." Tr. 26. At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

The ALJ found Plaintiff's RFC allowed him to perform less than the full range of light work (SVP-2). Tr. 26–7. At step four, the ALJ concluded Plaintiff was not capable of performing his past relevant work as a computer software engineer or cabinet maker. Tr. 34. The Vocational Expert (VE) determined, based on the hypothetical provided by the ALJ, that Plaintiff could perform occupations such as photocopy machine operator, laundry folder, or produce sorter. Tr. 35. Therefore, the ALJ concluded that Plaintiff was not disabled at any time from January 1, 2011 through June 30, 2012. *Id.*

## I. The ALJ Did Not Err in Evaluating Plaintiff's Subjective Symptom Testimony.

Plaintiff argues the ALJ discredited his subjective symptom testimony without providing a clear and convincing rationale. Plaintiff alleges the ALJ erred by finding his testimony inconsistent with the medical record; by relying on medical testimony that stated Plaintiff's visual acuity was "surprisingly good" despite Plaintiff's testimony that his vision fluctuated and by failing to include Plaintiff's Charcot's foot diagnosis into her analysis.

Absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9h Cir. 2008); *Lingenfelter*, 504 F.3d at 1036 (9th Cir. 2007).The ALJ is not "required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting *Fair v.*

*Bowen,* 885 F.2d 597, 603 (9th Cir.1989)). The ALJ "may consider a wide range of factors in assessing credibility." *Ghanim v. Colvin*, 12-35804, 2014 WL 4056530, at *7 (9th Cir. Aug. 18, 2014). These factors can include "ordinary techniques of credibility evaluation," *id.*, as well as:

> (1) whether the claimant engages in daily activities inconsistent with the alleged symptoms; (2) whether the claimant takes medication or undergoes other treatment for the symptoms; (3) whether the claimant fails to follow, without adequate explanation, a prescribed course of treatment; and (4) whether the alleged symptoms are consistent with the medical evidence.

*Lingenfelter v. Astrue,* 504 F.3d at 1040. "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). The ALJ found Plaintiff's testimony inconsistent because it was contradicted by the medical record, his daily activities, and Plaintiff's own testimony. As detailed below, the ALJ articulated clear and convincing reasons for discounting the credibility of Plaintiff's subjective symptom testimony.

**A. The ALJ Properly Discounted Plaintiff's Vision Fluctuation Testimony.**

Plaintiff claimed that his vision uncontrollably fluctuated due to his diabetes and was not controlled. Pl.'s Br. 17, ECF No. 12. An impairment that can be controlled with treatment is not disabling for Social Security purposes. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). The ALJ deemed Plaintiff's vision fluctuation was controlled by shots of Eylea, Avastin, and Lucentis. Tr. 28–29. In making this finding, the ALJ relied on the opinion of Plaintiff's treating ophthalmologist, Dr. Wayne Lo, M.D. Dr. Lo opined that Plaintiff's vision would restrict his work, but did not support Plaintiff's testimony that he could not work at all. Tr. 52, 67. For instance, Dr. Lo noted that "Computer programming, something Plaintiff used to do, is much harder on a normal basis." Tr. 1019. Dr. Lo also opined Plaintiff should "take care around sharp tools and power tools, as woodworking was a former job/hobby." *Id.* The ALJ accounted for these limitations in her RFC, precluding Plaintiff from working with small items

under one half inch in size, and noting Plaintiff had difficulty reading small print, and limiting Plaintiff to working with objects larger than one foot in diameter. Tr. 27.

At the hearing, Plaintiff also admitted that he had a license and his eyesight did not prevent him from driving during the dates in question. Tr. 64. The ALJ used clear and convincing reasons to discredit Plaintiff's vision fluctuation testimony to the extent Plaintiff's vision prevented him from performing any job.

**B. The ALJ Did Not Err in Discounting Plaintiff's Charcot's Foot Testimony.**

Plaintiff alleges the ALJ erred by not considering his Charcot's foot diagnosis. Pl.'s Br. 16, ECF No. 12. Plaintiff claims the Charcot's foot symptoms started "one to two months" before the initial diagnosis in August, putting it within his time insured. Pl.'s Br. 10, ECF 12. The ALJ discounted Plaintiff's Charcot's foot diagnosis because she found the diagnosis and symptoms fell outside his last date insured, and the condition did not last longer than 12 months. Tr. 29. The ALJ refers to the record stating Plaintiff was diagnosed with Charcot's foot on August 17, 2012, two months after his date insured. *Id.*

Plaintiff has the burden to establish disability prior to the date his insurance coverage expires. 42 U.S.C. § 416(i); 20 C.F.R. § 404.1505, 20 C.F.R. § 416.905. Disability is defined as the inability to complete substantial gainful activity because of a physical or mental medically determinable impairment. *Id.* The ALJ can only use medically determinable impairments to contribute to a finding of disability. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505; C.F.R. § 416.905, SSR 96-7p. A medically determinable impairment must be based on signs, symptoms, and laboratory findings from an acceptable medical source. 20 C.F.R. § 404.1513. If there are no medically determinable impairments, symptoms cannot be found to affect Plaintiff's ability to complete basic work. *Id.*

Plaintiff was not diagnosed with Charcot's foot until after his date last insured. Tr. 29. Plaintiff testified he exercised by walking an hour a day, and continuously worked long hours on his feet as a wood worker during his time insured. *Id.* Plaintiff did complain of intermittent foot pain throughout his testimony. Tr. 49-50, 52, 56, 58. However, Plaintiff testified he was on his feet for 12 to 16 hours per day, six days each week, throughout the time in question. Tr. 51. The ALJ reasonably concluded symptoms from Charcot's foot appeared after June 30, 2012, Plaintiff's date last insured. This is a reasonable interpretation of the record.

On August 14, 2012, Plaintiff reported to Dr. Chen that he had swelling in his right foot for one month. Tr. 592. Dr. Chen referred Plaintiff to a podiatrist. On August 17, 2012, Plaintiff told the podiatrist he had swelling for 1-2 months. Tr. 596. The podiatrist noted, "At first the swelling would show up during or at the end of the day, but later it was there all the time. . . . He is a cabinet maker and is on his feet a lot. . . . He hasn't had significant pain in the foot." Tr. 596. Plaintiff appeared for that appointment on crutches. Tr. 596. The ALJ reasonably concluded Plaintiff did not meet his burden of establishing disability due to Charcot's foot before June 30, 2012, his date last insured.

## C. The ALJ Provided Clearl and Convincing Resons for Discounting Plaintiff's Testimony Regarding His Daily Limitations.

Plaintiff testified that he worked during the time in question, but that the work was non-productive, and he needed numerous breaks due to his gastrointestinal symptoms. Tr. 50. The ALJ may "reject the claimant's testimony about the severity of his symptoms only by offering specific, clear and convincing reasons for doing so." *Brown-Hunter,* 806 F.3d at 493 (quoting *Lingenfelter,* 504 F.3d at 1036). The ALJ may consider whether the claimant engages in daily activities that are inconsistent with the alleged symptoms. *Lingenfelter*, 504 F.3d at 1040. In

making her credibility decision, the ALJ relied on statements by the Plaintiff that he was independent regarding self-care and hygiene, able to complete chores, capable of operating a riding lawn mower in order to maintain five acres, able to drive to Seattle to visit family, able to help around the house, and able to spend 12-16 hours, six days per week, in his woodworking shop. Tr. 30. The ALJ acted reasonably in noting inconsistencies between daily activities and alleged limitations in determining Plaintiff's credibility.

Plaintiff complained of heartburn, slight dysphagia, a cough, gastroesophageal disease (GERD), and abdominal bloating. Tr. 31, 414, 464, 553. Plaintiff seldom sought treatment for gastrointestinal symptoms throughout his date insured, he claimed that his symptoms were reduced by alternative treatments such as acupuncture, and he rejected treatment suggestions by his doctors in favor of supplements. Tr. 30, 464, 465, 493, 553. An unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment can be used by an ALJ to determine credibility. *Tommasetti*, 533 F.3d at 1039 (quoting *Smolen*, 80 F.3d at 1284). The ALJ pointed to this specific, clear, and convincing evidence to reasonably conclude that Plaintiff's statements concerning the intensity, persistence and limiting effects of his symptoms were not entirely credible.

## II. The ALJ Reasonably Considered the Medical Source Opinion of Dr. David Chen M.D.

Plaintiff argues the ALJ improperly rejected the medical opinion of treating physician Dr. David Chen M.D. by giving it little weight without providing clear and convincing reasons for doing so. Pl.'s Br. 19, ECF No. 12. "Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion." 20 C.F.R. § 404.1527(c). A retrospective opinion has relevance if it relates to the period at issue. *Flaten v. Sec'y of Health & Human Servs.,* 44 F.3d 1453, 1460. (9th

Cir. 1995). Dr. Chen started treating Plaintiff on April 4, 2012. Tr. 28. Plaintiffs date last insured was June 30, 2012. Dr. Chen concluded in 2014, two years after Plaintiff's date last insured, that Plaintiff's symptoms affected his ability to work. Tr. 1027-1031. The record reveals Plaintiff's April 2012 visit with Dr. Chen was largely unremarkable. Plaintiff's diabetes and renal manifestation were controlled, and his gastrointestinal symptoms were helped with acupuncture. Tr. 553-55.[2] The ALJ gave Dr. Chen's opinion little weight because his opinion relied largely on interactions with Plaintiff after his time insured, when Plaintiff's condition deteriorated. Tr. 32. The ALJ did not err in weighing the medical evidence.

### III. The ALJ did not err in rejecting lay witness testimony.

Plaintiff's wife and daughter stated that Plaintiff was unable to fish, dance, read, use a computer, or woodwork due to his visual impairments. Tr. 222–227, 267. They also stated he was unable to perform physical activities such as taking care of his farm due to difficulties with his feet. *Id.* Lay testimony about a claimant's symptoms is competent evidence which the ALJ must take into account unless she gives germane reasons to reject their testimony. *Stout.,* 454 F.3d at 694. "An ALJ need only give germane reasons for discrediting the testimony of lay witnesses. Inconsistency with the medical record is one such reason." *Bayliss v. Barnhart*, 427 F.3d 1211,1218 (9th Cir. 2005).

An ALJ may discount other source opinion when the opinion is inconsistent with medical evidence in the record and inconsistent with other evidence of the claimant's functioning. *Jamerson v. Chater*, 112 F.3d 1064, 1066–67 (9th. Cir. 1997). Plaintiff testified during his hearing that he had become an "avid reader", and reads a lot. Tr. 56. Plaintiff testified that he worked 12 to 16 hours a day woodworking, Tr. 50, and that he used a computer to work on coding with a larger screen to compensate for his impaired vision. Tr. 52–53. The Drain family's

---

[2] As noted above, the ALJ gave significant weight to Dr. Lo's opinion regarding Mr. Drain's vision limitations.

statements are contradicted by Plaintiff's own testimony. The ALJ acted reasonably in giving the family statements limited weight.

Plaintiff argues the ALJ improperly discounted Abigail Nelson's testimony because she was a nurse practitioner, which is not a germane reason for discounting testimony. An ALJ only needs germane reasons to discount an opinion from a source such as a nurse practitioner. *Molina*, 674 F.3d at 1111. That an opinion is inconsistent with medical evidence in the record is an acceptable reason to discount the opinion. *Jamerson*, 112 F.3d at 1066–67. Ms. Nelson started seeing Plaintiff in March 2015, almost three years after his last insured date. Tr. 1272. Ms. Nelson's testimony stated that Plaintiff could not stand for long periods of time during his time insured. Tr. 1272. Ms. Nelson cited to recent symptoms such as Plaintiff's liver functioning issues. *Id.* Plaintiff however, testified to putting in 12 to 16 hour work days during his time insured, and did not seek medical treatment for liver until after his date last insured. Tr. 49-50, 52, 56, 58. The ALJ reasonably discounted Ms. Nelson's opinion because Ms. Nelson based her conclusions on findings and symptoms that did not occur until long after the time period relevant to Plaintiff's claims.

Plaintiff seeks to introduce new evidence for the ALJ to consider that was not present when she previously reviewed the record. Pl.'s Br. 23–24, ECF 12. Dr. Christopher Beardall, Plaintiff's a chiropractor and acupuncturist, provided an opinion dated November 30, 2015. Tr. 1275-1283. Dr. Beardhall treated Plaintiff from June 2011 until June 2013. Tr. 1280.

The Ninth Circuit allows new evidence to be considered, even if it is brought to the Appeals Council after an ALJ issues a ruling. *Brewes v. Comm'r of Soc. Sec. Admin.,* 682 F.3d 1157, 1159-60, 1162-63 (9th Cir. 2012). Evidence obtained after the ALJ has issued an adverse

determination is less persuasive than evidence found before the determination. *Key v. Heckler*, 754 F.2d 1545, 1550 (9th Cir. 1985).

Dr. Beardalls' testimony does not meet the criteria of "substantial evidence." His November 30, 2015 opinion comes over three years after the date Plaintiff was last insured, and does not refer to symptoms that were relevant in 2011–12. Tr. 1283. Instead, Dr. Beardhall seems to point to symptoms that significantly worsened—as noted by the ALJ—after Mr. Plaintiff's date last insured. For instance, Dr. Beardhall opined that Plaintiff could lift or carry no weight. Tr. 1282. But Plaintiff admitted working to maintain his 5 acre property, which included lifting bales of hay for 30 minutes at a time. Tr. 381. Additionally, although Dr. Beardhall opined Plaintiff needed a walking cast or wheelchair, Plaintiff was not diagnosed with Charcot's foot until two months after his date last insured.[3] Additionally, Dr. Beardhall's opinion is unsupported by any treatment notes or objective clinical findings. In short, Dr. Beardall's testimony does not raise new issues or clarify points that would substantially change the analysis used by the ALJ in her ruling. Further, because this evidence was issued after the ALJ issued an adverse determination, it is less persuasive than timely admitted evidence. *Key*, 754 F.2d at 1550.

## CONCLUSION

The ALJ's decision is free of legal error and supported by substantial evidence. The Commissioner's final decision is therefore AFFIRMED.

IT IS SO ORDERED.

DATED this 17th day of January, 2018.

_____/s/ Michae McShane_____
Michael J. McShane
United States District Judge

---

[3] As described above, Mr. Drain did not need a wheelchair during his dates insured, and admitted spending 12-16 hours on his feet, six days per week, during his dates insured.

11 – OPINION AND ORDER